Case number 10-0774, Joanna Rachel v. John Sershen. Good morning, your honors. My name is Bernard Rolse. I represent the plaintiff at the Lent, Joanna Rachel. And good morning. At this report, my name is Stephen Jaffe. I represent John Sershen. He is the defendant on the affidavit. I'm very certain that all of you have carefully read the briefs that have been filed here, and I will try to be very succinct in my remarks. First of all, I should also tell you, counsel, that I am stifling the impulse to ask you to identify all of the cases that you have cited, starting with the 10th one. But I'm going to resist that impulse. I'm glad you do. You have. If I may start, though. Essentially, and I'll try to come right to the points. If we start from the beginning, if we start with the structure, it was illegal ab initio. First of all, it was commenced without a permit. You have evidence that it was ultimately secured by a design that Mr. Sershen agreed he himself had created. And he also stated that everything on his report was true. Yet he shows on his report a structure that is 3 feet within his property, where we know darn well it extended over 9 inches with the overhang into the property. Now, the question that I would have is, what is the relevance of any of the information that you've so far presented to us? Assume that it's made in compliance with the city code or made without compliance with the city code. How does that impact on your private right? And I'm not assuming that it doesn't. It was an illegal structure, first of all. And an illegal structure cannot, under the circumstances of this case, ever become a lawful easement, which the ultimate decision in this case made it. Well, who determines that? The adjacent landowner or the administrative agency of the political body in charge of that construction? Well, it's the next point. My argument that I would raise to you, if you recall the argument or the facts in this case, Byron White, who was the city officer who was on there to testify under subpoena, he said the city would never approve such a structure. Yet they approved it based upon... Well, it absolutely was a nuisance. It wasn't... Yeah, I know. But supposing it wasn't, would you have a private right of action? I would imagine you would certainly have a right to bring a quo oronto action, if nothing else, to question that. In fact, my own experience... But you didn't bring a quo oronto action. No, we didn't. So we don't have to explore that. I was not the original attorney either, if you look in the record. Well, even if you were, you've been at it too long for me to think that you would fall prey to a quo oronto action. Judge, I might tell you I've had a very successful quo oronto. In fact, one of the justices who was sitting right next to you, Judge Epstein, in fact, entered the agreed order which enforced the quo oronto that I brought in his courtroom. And that happened, I would say, about a year and a half ago. Counsel, I'll tell you what I would like from you, if you can help me out, and perhaps my colleagues on the bench would also agree with that. Tell us where among the various alternative recourses that are offered, starting with monetary damages, where trespass is a legal action, you know, where there would be a continuing trespass, where the time limitation would be from the first day with no increment based on any additional days that passed between that first exposure of the encroachment and your decision to file suit. If you can get us through that navigation, you will be of major assistance to me. Well, Judge, I can, and if I may proceed to do so. First of all, we are in a court of chancery. Start with the beginning. You know, Mr. Maltz, that always was a signal to me that we don't have a legal argument. Yes, you do have a legal argument. Why don't we focus on the original question and not invoke the chancery rights? Okay. All right. First of all, the only reason I mention chancery so I can explain why I mention it, because before a court of chancery can consider a statute of limitations, they must address the issue of latches. If they do not do so, they cannot go into any statute of limitations and, in this case, choose the wrong one, which is exactly what happened here. First of all, well, latches would entail here a weight of about 14 years, would it not? And the period of limitations that might be applicable under statute would be five years. So you would lose the benefit of the maxim that latches would tend to follow limitation periods. And if that's the case, why should that be the result? Judge, we're coming down to was the court justified in following Bank of Ravenswood or is Myers v. Kushner of the Supreme Court applicable here? Let's cut to the chase on that. First of all, when they impose a five-year statute of limitations, it's only done because of money damages. This was not an action for money damages. The complaint that is a part of the record here and the ultimate third amended complaint, which I prepared after I got into the case, seeks no monetary damages. All that we seek is an abatement of an encroachment. Now, this encroachment began well within 20 years of the date. And if you'll follow Myers v. Kushner, in a very similar situation, our Supreme Court in 1992 said that we have to follow, we have to consider what was, when it started and you have to consider that it is a 20-year statute of limitations because this is a continuing trespass, a continuing encroachment. It is not just that the structure was there, but just like the damages. Is there a 20-year statute of limitations or a 20-year period of adverse possession? I believe that the Supreme Court in Myers adopted a hybrid of that, of those two, if you want my reading of that case. I'm not aware of any period of limitations that exceeds five years as a period of limitations. Myers absolutely exceeded it, and it was exactly the same. But that would entail adverse possession. Well, it wasn't adverse possession. It would require open, notorious possession. It would require evidence that would meet the other criteria for adverse possession. Well, let's go to that. First of all, there are six requirements for adverse possession. Open and notorious, which it was. Continuous, which it was. Exclusive, which it was. And under claim of title. It had all the elements that you have to have to have an adverse possession. Let me ask you something else here, if I might, because I think our time is up. I'd like to keep you on the subject if my colleagues would acquiesce, but I have to be wary of the clock. So let me ask you about two things that I think have central bearing. One is the fact that you were aware of the encroachment and acquiesced to it during the period of armistice with your neighbor, where the bar mitzvah or whatever else it was that took place there, where they were socially engaged. It was anything but a bar mitzvah. It was a wedding. But the point of the matter, and that was only because Mr. Searchen tried to infer that there was some animosity here. Now, if there was an acquiescence, is that not a waiver? If there's an awareness and an acquiescence over a period of time, is that not sufficient? Let's say if the acquiescence, if there's an awareness of several years, isn't that a basis from which to infer waiver? No, not in this case. Why not? Because, first of all, you have to have a knowing waiver of an existing right in order to have a concept of waiver. Well, did he not know about the encroachment? But he did not know about its illegality until that day when they were all the best of friends. There was never an argument between them. What illegality are you now referring to? The city code? Is that the illegality? Or is it the fact that they didn't know that their borders were encroached? He told her that he had, if you recall, the back-of-the-art conversation when they were close friends. And he told her the story of how he had euchered a foot of property from the next-door neighbor. And then he proceeded to tell her, and, you know, I did the same here. And he acknowledged that this was he, for the first time, said, this is illegal, but it's grandfathered, and I can get away with it. When she checked the records of the city, she saw, lo and behold, everything that came out of evidence. How much time elapsed from that conversation before an action was taken? One year. The conversation took place in 2003. The lawsuit came in 2004 by my predecessor, whoever they were. But she was aware of the encroachment physically during the entire time that she was in possession of the ownership of the property. She saw the encroachment. It would be absurd to say she didn't. But by the same token, she inferred, not knowing the law, that because it's there, it has to be legal. To any lawyer looking at it, of course you would be in the same problem. How about the oral acquiescence of this person known as Stan? I'm glad you asked that. I'm glad you asked that. You may not be when I'm finished. First of all, Stan has never been identified. Stan came in only through an improper form of hearsay. Why is that an improper form? Because if Stan is a prior owner, there is a relationship of privity between him and your client. And as such, your client would be bound by any concessions that Stan would make and that your client would take the property as he found it. First of all, he wasn't the one who sold to him. The person who sold to us was not a Stan. Stan was never identified other than the name Stan whose whereabouts were unknown. And you absolutely cannot create an easement or a license by parole. And I have cited cases in that regard. And I'm sure you know it infinitely better than I do. So here is a situation where the judge committed a decipherment. However, it would have a bearing, if I might, it would have a bearing on the state of the existing relationship among the parties when this encroachment first appeared. It would show that it did not appear out of spite or necessarily out of intent, but would have been directed through friendly avenues. And for some reason or other, courts of chancery care about that. I cannot see how that could possibly be a way of establishing a legal estate of an easement or a license. You can only create an easement or a license by, you cannot do it by parole. It's almost elementary that you cannot do it. You can only do it by a written form. And if this was true, everyone is required to follow the law. He could have, under these circumstances, at least obtained an easement. But how can you obtain an easement for something that is patently illegal? If you'll just recall one of the facts in this case, which I believe is very startling. The man says, I started to lay the foundation at the time when, before I ever had a permit. The city came along and they stopped him. And when they stopped him, they said, hey, you can't do this. You have to have a permit. So he presents a plan which was absolutely false. We know that the wall starts at the party line. He presents a plan to them where he is three feet over onto his property. And when he looks for, and then when he puts the structure on the top, that goes down in about 2000, 1999 I think it was. In 99, when he puts the structure on top, he again completely misstates the property and the position of the property and the position of the structure, which is illegal and it exists until this day. And everyone has a right to be secure in the law that it's going to be followed. You cannot create an illegal structure deliberately, which was done here, because he knew where it was. He admitted when he was impeached at the trial from his own deposition that he in fact. You're talking about illegal by virtue of its encroachment, is that right? It was illegal. It was illegal. By virtue of the encroachment. That's true, too. Really, you've more or less taken away all that I was going to say. So I'm pretty, if there's anything. You'll have some time on rebuttal. I look forward to that, Judge. Thank you so much. Thank you. Thank you for hearing me. Good morning, again. I don't see where the municipal code has a right for private attorneys general to bring their own action to enforce the code. I didn't address it in my brief because the trial court did not address it in his opinion. But the city files a complaint against you. They take you to housing court. Even the filing of a complaint doesn't mean that your structure is illegal. You get a chance to defend yourself. You go before a hearing. Well, if that illegality intersects with an interference with the property interests of the neighbor, in other words, where the illegality is based on the fact that it encroaches over other property owners' boundaries, then whether the action of the neighbor is derivative or direct makes very little difference here. He would have an action. Yes, but it wouldn't be based on it being illegal because the city never found that it was illegal. But it would have a direct action. So what's the difference? Well, that's why I didn't address that. With regard to the direct action, I've cited the Bank of Ravenswood. The trial court also cited the Bank of Ravenswood. It's this court's decision. I guess this court could change the Bank of Ravenswood. I know that you can if you want to, but I think the trial court was bound to follow it. It says that once you make the initial intrusion onto the land, that's the date that the statute of limitations starts to run. It's not a continuing violation every day. Well, there were other violations here that were changes in the mode and manner of the violation as it first appeared, namely the issues with the dog and the water. Presumably the water would have existed any time it rained, but the dog issue was something that introduced itself and then apparently, according to the record of the case, was solved at some later point. I would agree. First of all, obviously it rains all the time in Chicago, so the water issue would have been from the beginning. In terms of the dog, if in fact there was dog feces washing over to the property, when that happened, the dog feces itself, I suppose it wasn't argued in the trial court, but that could be a trespass in and of itself, that was largely denied. The trial court made no findings of that. And what about the building of a terrace on top of that roof? That would be something new, wouldn't it? I'm sorry, you're talking about the dog? Wasn't there a terrace built on top of that roof? I don't believe so. I believe all of the construction was right in the beginning and well before the plaintiff had bought the property. I don't believe that's the record, Your Honor, with all due respect. I believe the initial construction was all done and completed long before she came on the property. It was two owners previous to her. So with regard to that, she can see that the overhang is there. It's less than the length of a piece of paper. It's back at the garage level. She doesn't prove any damages, which I don't think she would ever be able to do because presumably if you buy the property, if it was diminished, there's no proof that it was diminished in any way, but that's how she bought it. She must have had the benefit of the bargain. She sees it there. She knows what she's doing. In the meantime, my client did not just ignore his neighbor. The record is that his neighbor gave him permission to do this and, in fact, asked for him to build it in such a way as there would be an encroachment. He then changes his position. He builds it the way the neighbor asked for it. He goes to considerable expense to do it. And more importantly, it would be a considerable expense based on the evidence, the testimony, to have to remove it. And I'm sort of reluctant now to bring up chancery because you agree that you can't grant an easement orally. Is that right? Absolutely, Judge. There's a statute of frauds element involved. But then if you can indirectly, through waiver or through the creation of waiver, in effect establish what is the same relief that you would have gotten had you gotten an easement, do you think that that could happen? I do, Judge. I agree. An easement has to be in writing. I agree with counsel. That's elementary law. I think the proper defense, which I did raise and the judge, again, never ruled on because of how the trial court ruled, is promissory estoppel. I believe that she is in privity with the prior owner that he made a promise in the effect, please build this this way, that says I'm not going to sue you once you build it this way. My client then changes his position materially. It's reasonable for him to do it. Does he have that change of position here? He does because he went to considerable expense to construct this and will be even more expensive. After getting acquiescence from whom? From the neighbor who then owned the property, Stan. His last name actually. Okay. So we're not talking about the plaintiff. We're back to Stan, who your opponent attempts to image as a phantom. Now, what is there that gives him any kind of flesh and blood in this proceeding? Introducing the evidence, among other things, and I'm sorry I didn't cite to this because we never reached the promissory estoppel argument. It's not part of the judge's decision. In the record are documents that include the chain of title. In point of fact, when the evidence issue came up to the lower court, the arguments were not made that this was a privity relationship. The argument that was made was that somehow this impacted on state of mind, which frankly I had difficulty understanding because I didn't know what the relevance of that was. Right. I mean, the state of mind looked like a throwaway argument. If we don't have anything else to say, we'll say state of mind and hope it slides through. How does this impact on state of mind? Yes, I would say, I'm not arguing with you on that point, but later in the proceedings I was able to get the same evidence in, not for state of mind, but substantively. The door had been opened by questions from plaintiff's counsel, and the judge then allowed me to put in the evidence that he had received permission in the prior order. Does your argument then hinge on the fact of a person who was absent allegedly giving some oral permission instead of a written easement that would somehow justify and bind someone who bought without knowledge of that? I did argue that in my written pleadings. It didn't come up at the trial. I don't believe the judge ever specifically ruled on that argument. It is in my pleadings. I think that she had at least implicit knowledge that this was here because you can see the thing. You can't possibly miss the structure in the past. Seeing it is a different issue. What you're raising is the inability to challenge it now, hinging in part on this argument that she is bound by somebody's statement that would have been not appropriate for creating an easement and where the declarant who allegedly gave that information not only was not called but is presumably a mystery at this point. Yes, he's certainly a mystery at this point. I agree with that. So what separates this other than the absurdity of saying it was a green moon man who owned it at the time it was said that? I think there's a principal judge, and I don't have a citation, that you see that there's a structure there that's coming over to your property. You have a problem with it. You are on notice to inquire before you come into possession and find out what the situation is. I think that she would have had an obligation if this was, in fact, a real issue. I, of course, don't think it's a real issue at all. I think it's nonsense. The thing that the 8-inch encroachment manages at the level of the roof at the back of the alley by your property, this is, to me, a de minimis encroachment. Then fix it. Pardon me? Then fix it. Take it back. You can't take it back without a major undertaking. If you could, there would be a different thing. I agree. If you put up a beach umbrella and it stuck over the property, it was just a matter of taking it back down, it would be a different case. But this would take a major undertaking to do. But nobody really – there was not any evidence other than that representation as to what it really would take. Well, evidence wasn't challenged. I'll tell you something else. We occasionally indulge at least for moments in reading between lines in briefs in certain kinds of treatment. Now, we know that this overhang was created by the owner, who was a policeman who liked to hobby himself, if I might take the liberty of characterizing it that way, with this kind of construction. And then there is a statement later that seems to be almost obligatory that he couldn't do that now. But reading between the lines, one would certainly want to speculate whether that's good lawyering or good fact. I believe there's evidence, testimony from my client, that he sustains – he's had back injuries over the years that preclude him from doing any more physical labor. I believe that's in the record. I'm certain I'm not making that up. Well, I'm not charging that you are by any means counsel. And I'm just – I think it was in the record. I believe that's part of it. I'm prepared and intend, when I do decide this case and when we do consider it, not to consider that speculation on my part. Thank you, Judge. In any event, it appears to me that the trial judge was conscientious in considering the evidence that he did not say that my client flat out owns this or that he has an easement. If he does anything there, he has to remove to the original line. He can't make improvements. He can't extend it. He can't do anything with it. I think the trial judge fashioned what he thought was the proper equitable remedy. So it is a court of equity. He's supposed to have discretion to fashion an equitable remedy, and he's supposed to take into consideration all of the circumstances, which would certainly include that this is a small, small intrusion that she knew about, that she had no problem with, that she liked when she originally bought the property. It really – this case is not about the intrusion at all. It really isn't. It's a neighbor dispute. And I did cite to the case, which his name escapes me, but for the point that it's Chicago. Walk up and down any block here and you see people have their satellite dishes sticking out over somebody's property. The fences are a little bit over. I don't know. We can't really sue each other every time we get mad at our neighbors over things like this. We shouldn't be able to do it. Thank you, counsel. Thank you. Thank you. Appreciate it. A few moments for rebuttal. First, the judge made two decisions in this case. On 10-2209, he says he makes a finding that the defendant does not have any adverse interest in the plaintiff's land. When he's asked for a clarification, which ultimately leads to his appeal on 217-10, he declines to remove the encroachment, and he says that it must remain and it can only be extended – it cannot be extended but can only be touched for the purposes of repairing it or keeping it in a state of repair. From that, we come with the decision that he has given her a perpetual – he's given this defendant a perpetual easement, which was never, ever created by law and which is based upon an illegal design which, by his own testimony, came in that way. Counsel argued to you, if you want to decide for the plaintiff, you have to reverse Bank of Ravenswood. I absolutely disagree. This case is totally distinct from Bank of Ravenswood. This is not an action for money damages. This is a case coming completely within the purview of Myers v. Kushner, which is a Supreme Court decision, which controls the situation. Another thing that's very important is this dog business. They say, first of all, this puts us directly within the scope of Myers, because in Myers, it was not that the thing existed, but there was a continuous runoff of water from the defendant's property. He didn't even – we're even in a better position than Myers. He didn't do anything. It was a natural runoff. We don't know, do we, counsel, when the intrusion attributable to the dog ended. Well, she says, yes, it's depending on who you wish to believe. First of all, it wasn't the figment of the plaintiff's imagination to bring herself within the purview of Myers. As far as you're concerned. Well, look at the record. The record shows that the defendant admits, yes, my dog would go up there and for a time he was doing his business up there and the excrement was falling down onto the other property. And she says it's still falling down. And the water falling down, creating the unnatural condition, continues just like the situation in Myers. And another point that we have here is it is incredible to believe that this defendant is asking for a court to sanction a false design, deliberately false, building an illegal structure, maintaining it, was found only when he bragged about it, saying it was grandfathered. Investigations showed it was defective and the plaintiff acted as expeditiously as she could. And they were built on two separate occasions. When he was engaging in friendly colloquy with your client. It wouldn't matter. He told her about it. And remember, well, of course, you were not to try her fat, but the plaintiff certainly was not one who you'd go to for a legal opinion. She was a simple, nice lady who I don't think completely, to this day, understands all that has happened here. But she has a problem that she's now settled with as follows. Animal dung is falling onto her property. There's an obliteration of air and light. And there is no gutters. An obliteration of air and light. There's an obliteration. It obliterates the air and it obliterates the light and it confines the air. Aren't you a little far over your skis on that one? Well, I never did that in sports, so I probably wouldn't be here today if I had, because I'd have killed myself. But essentially what you have here is, and the more significant thing is, he's created a condition on her property that makes it highly difficult to sell, diminishes the value of the property at the very least. And there's testimony that she lost one buyer because of this condition that now you have to acknowledge exists. And the dog business was not a unilateral thing coming from the defendant that was extracted that this business is happening. And he has no gutters at the end, so the water is falling and it is freezing at the bottom in the winter. Do you have a separate cause of action if the dog feces is still coming over for public? Well, the dog feces business brings you within the scope. That and the water certainly makes this case analogous. So has this occurred to anybody that putting in a gutter would solve this whole problem, except for the obliteration of Aaron White that you allege? Well, the Aaron White would still be open. If I were still across the street and had been in my courtroom, I'd say get in my jury room and figure it out. And the chances are he would have done it six years ago or seven years ago when this cause of action accrued. It's astonishing to me that something we don't like the water dripping from the edge of the garage roof onto our walkway, not onto our house, into our backyard. If somebody doesn't put a gutter in there, it would drain onto the other person's property. It probably would be done for a few hundred dollars. Where would the gutter drain is the problem. It would drain onto our property. I think they could probably engineer it to go back onto the opponent's property. Well, that is what he would say. My understanding is, and obviously Justice Epstein's point is extremely well taken, and I bit my tongue about saying it myself, because these actions as they approach the minimus rightfully engage questions of canons in so far as taxing the resources of judicial administration. But for whatever it's worth, the presence of that dog on that roof has terminated. It depends on which testimony you wish to believe, and the court never addressed it in its decision. She said it was still going on. He said it stopped. And it certainly can terminate, right? It could or it could get worse. The dog itself can terminate. The dog can terminate, but he's not the last dog in the world. We both know that. Thank you very much for hearing me. So is there anything else? No, I just say that the case as it sits now creates a horrific precedent. It rewards an act of complete dishonesty to the city of Chicago by giving a perpetual easement. It is contradictory by its own terms, where in one situation, the defendant is found not to have any right to maintain an interest in the plaintiff's land, yet by the court's later decision, it gives the defendant a right to maintain a perpetual easement. I think, counsel, that point has been vividly made. And if there is nothing else, why don't we move on to our next panel?